## ORMSBY *vs.* THE VERMONT COPPER MINING COMPANY.

Although a corporation has abused its power, or committed acts which are unlawful, it, nevertheless, continues legally to exist as a corporate body, until the State or government which created it shall, by a proper proceeding, procure an adjudication and enforce a forfeiture of the charter.

Acts which are improper do not, of themselves, work a dissolution; and if the stockholders participated in such acts, they will not be heard to allege their invalidity.

The charter of a corporation created by the State of Vermont authorized the making and alteration of such by-laws and regulations as a majority of the corporators should direct; and it was expressly made subject to the compiled statutes of that State, which provided that the shares in any private corporation might be sold, in case the owner should neglect or refuse to pay any tax or assessment duly laid according to the by-laws thereof. At a meeting of the stockholders, held in the city of New York on the 26th of December, 1856, an amendment to the by-laws was adopted, by which the directors were authorized to assess the stock of the company, not exceeding five cents a share; and authorizing a sale at public auction of any shares, the assessment upon which should not be paid. Under this authority, certain shares were sold, for non-payment of assessments, and new certificates issued therefor, to the purchasers; the original owners having notice of, and submitting to such action by the company. The plaintiff, claiming to be owner of these shares, under assignments of the original certificates, from the former owners, brought an action against the company, to recover damages for its refusal to transfer such stock to him.

*Held,* 1. That there was lawful authority for the assessment; and even assuming that the meeting of the stockholders, at which the assessment was authorized, was a special meeting, and held out of the State of Vermont, it was, nevertheless, competent for the stockholders, as between themselves, to waive those irregularities, and to assent to the validity of the proceeding.

2. That after they had done so, and action had been taken, by the corporation, on the basis of the proceeding of the stockholders, and such action had, by the sale of stock for unpaid assessments, and the issuing of new certificates to the purchasers, placed the corporation in a new position, the stockholders who had participated in the proceeding could not be heard to object to it; but were *estopped* by their voluntary acts.

3. That if, with knowledge of the proceeding, shareholders participated in such action, and for years acquiesced in it, they were bound by it; and the stock which they held was subjected to the consequences.

4. That upon a transfer, by such stockholders, of their certificates, the assignees got no better title or superior right, in respect to the stock, than the assignors had; which was no title at all.

5. That the action of the company, in issuing new certificates for the shares to the purchasers at the assessment sales, took away from the original certifi-

cates all value; and they no longer represented the shares, for the original shareholders had forfeited their stock.

APPEAL, by the plaintiff, from a judgment entered on the verdict of a jury, and from an order denying a motion for a new trial, made upon the judge's minutes.

*John Flanders*, for the appellant.

*Moses Ely*, for the respondent.

*By the Court*, FANCHER, J. The plaintiff brought this action for damages, against the defendant, on account of its refusal to transfer to him certain shares of stock in the said corporation, which he claimed to own. On the trial, at the circuit, the plaintiff waived all claim to recover, except in respect of 800 shares, issued to Charles Durand, and 500 shares issued to Charles J. Gilbert. The plaintiff produced on the trial the certificates for those shares; the former being dated on the 26th of February, 1856, and the latter being dated on the 21st of December, 1854. Transfers, in the usual form, were also produced by the plaintiff, both dated on the 8th of April, 1867, whereby the said shares represented by the certificates issued to said Durand and said Gilbert, were transferred to the plaintiff. The plaintiff claims that he purchased the shares in April, 1867, but it was proved he paid only a small per cent on the nominal or par value of the shares.

Many years prior to the plaintiff's purchase of the certificates, and while the original stockholders named therein were the owners of the shares, an assessment on the stock was made; and, for want of payment of such assessment, the shares were, on the 25th of June, 1857, sold at public auction for three and a half cents per share; and new certificates for the stock were issued to the purchasers. There was evidence tending to show that the shareholders, whose stock was assessed, had notice of the assessment and that unless paid by a specified

date, the stock would be sold.    There was also evidence that the owners of the stock submitted to the action of the company, and, after the sale, considered their shares as forfeited.    Durand did not consider his shares, after the assessment sale, as of any value; and Gilbert, having died years afterward, left his scrip among his papers. His administrators, on inquiry, ascertained what the company had done in respect to the shares; thenceforth submitted to such action, and set no value on the stock.

On the 26th of December, 1856, at a meeting of the stockholders, in the city of New York, an amendment to the by-laws was adopted by which the directors were authorized to assess the stock of the company, not exceeding five cents a share, to furnish means to carry on its operations or pay its debts; and authorizing a sale at public auction of the shares of any stockholder who should refuse or neglect to pay such assessment, pursuant to section 10, chapter 83 of the compiled laws of Vermont, relating to private corporations.

The charter of the corporation is a Vermont statute, and was put in evidence.    It authorized the making and alteration of such by-laws and regulations as a majority of the corporators should direct; and by section three of the charter it was provided that the act should be subject to the provisions of chapter 83 of the compiled statutes, entitled "Private Corporations," and that the corporators might have all the benefits of said chapter.

The defendant also put in evidence section 12 (formerly section 10) of chapter 86 (formerly 83) of the compiled statutes of Vermont, (entitled Private Corporations,) which is as follows:

"Sec. 12.  When any proprietor in any private corporation shall neglect or refuse to pay any tax or assessment, duly laid or assessed by such corporation, agreeably to the by-laws thereof, the treasurer may sell by public auction the shares of such delinquent, under such regulations as the corporation by its by-laws may direct;

Ormsby *v.* Vermont Copper Mining Company.

and the purchaser, on producing a certificate of such sale from the treasurer to the clerk of such corporation, with the number of such shares so sold, and causing the same to be recorded by the clerk, shall thereupon be the proprietor thereof, and the excess, if any, after paying such tax or assessment and all proper charges, shall be paid by the treasurer to such delinquent, on demand."

The judge charged the jury, that if they found that Durand and Gilbert knew substantially that the meeting of stockholders had authorized the board of directors to levy the assessment or tax, and assented to it, or acquiesced in it for a long period of time, without objection, the plaintiff could not recover.

The verdict was for the defendant, and after it was rendered the plaintiff moved for a new trial on the judge's minutes. The motion was denied, and after judgment, the plaintiff appealed.

It is contended by the counsel for the plaintiff, that the stock was full paid stock, and could not be assessed, unless authority by law were given to make the assessment; and he further contended that no such authority existed in this case. But, it is sufficient to answer, the charter and law of Vermont, which were put in evidence, show that there was lawful authority for the assessment. Assuming that the meeting of the stockholders at which the proceeding was had, was a special meeting, and held out of the State of Vermont, it was, nevertheless, competent for the stockholders, as between themselves, to waive those irregularities, and to assent to the validity of the proceeding. After they have done so, and action by the corporation has been taken on the basis of the proceeding of the stockholders, and such action has, by the sale of stock for unpaid assessments and the issuing of new certificates to the purchasers, placed the corporation in a new position, none of the stockholders, who have participated in the proceeding, could be heard to object to it. They would

be estopped by their voluntary acts. Whatever the
State that granted the charter might find it proper to
do, to restrain or redress the action of corporators be-
yond the limits of the State, none of the stockholders,
*in pari delicto*, could object to the alleged irregularity.
There is nothing which is *malum in se* in the meeting
of the shareholders out of the State where their charter
was granted, nor any inherent vice in their making an
agreement there to raise funds to carry on the business
of their corporation by a general tax on the shares ;
and, therefore, such action cannot be characterized as
illegal. If, with a knowledge of such proceeding, the
shareholders participate in such action, and for years
acquiesce in it, there seems to be no reason why they
should not be bound by it. The stock which they hold
would be subjected to the consequences ; and should
any of such stockholders attempt to transfer their cer-
tificates, the assignees would get no better title or supe-
rior right, in respect to the stock, than the assignors had,
which would be no title at all. The action of the corpora-
tion in issuing new certificates for the shares to the pur-
chasers at the assessment sales took away from the
original certificates all value. They no longer represented
the shares ; for the original shareholders had forfeited
their stock.

Where a corporation has abused its power, or com-
mitted acts which are unlawful, it, nevertheless, contin-
ues legally to exist as a corporate body, until the State
or government which created it, shall, by a proper pro-
ceeding, procure an adjudication and enforce a forfeiture
of the charter. But all such proceedings are at the
instance and on the behalf of the State or government.
Acts which are improper do not of themselves work a
dissolution, and if the stockholders participated in such
acts, they would not be heard to allege their invalidity.
In this case, the plaintiff has no greater rights. The
stockholders from whom he derived his certificates,

must, under the charge of the circuit judge, have been found by the jury to have acquiesced in the proceedings for the sale of the shares. There was sufficient evidence of their assent and acquiescence to uphold the verdict.

There were some other minor questions raised on the trial, and discussed on the appeal; but they do not seem sufficiently important to require us to interfere with the verdict.

We think the judgment should be affirmed.

[FIRST DEPARTMENT, GENERAL TERM, at New York, May 5, 1873. *Ingra-ham, Fancher* and *Davis,* Justices.]