[No. 10191.   Department Two.   March 9, 1912.]

THE STATE OF WASHINGTON, *on the Relation of Preston Mill Company, Plaintiff*, v. I. M. HOWELL, *Secretary of State, Respondent.*[1]

CORPORATIONS—LICENSE FEES—FAILURE TO PAY—EFFECT—REINSTATEMENT—STATUTES—CONSTRUCTION.   Rem. & Bal. Code, §§ 3715a and 3715b, having provided that a corporation whose name has been stricken from the records for failure to pay its annual license fee might apply, at any time within six months, for reinstatement upon paying all fees and a penalty of $25, the amendment thereof by Laws 1911, p. 135, by changing the time within which the application could be made from six months to "any time after its name has been stricken," and increasing the penalty to $100, was intended to render inoperative Rem. & Bal. Code, § 3715d, providing that a corporation failing to make application for reinstatement within six months shall be thereby dissolved; since the acts are purely revenue measures, and the intent of the amendment was to permit reinstatement upon the conditions prescribed at any time, thereby increasing the revenues of the state.

SAME—CORPORATE FRANCHISES—FORFEITURE.   Such act does not violate Const., art. 12, § 3, prohibiting the legislature from remitting the forfeiture of any corporate franchise or charter, the striking of delinquent names for failure to pay license fees not being the forfeiture of a franchise or charter within the meaning of the constitution.

Application filed in the supreme court February 16, 1912, for a writ of mandate directing the secretary of state to ac-

[1]Reported in 121 Pac. 861.

cept a fee and issue an annual license to a domestic corporation.    Granted.

*Saunders & Nelson*, for relator.

*The Attorney General* and *J. T. S. Lyle, Assistant*, for respondent.

*A. J. Falknor*, as *amicus curiae*, contended that the construction placed upon the statute by the executive department is entitled to great weight.    *State ex rel. Smith v. Ross*, 42 Wash. 439, 85 Pac. 29; *Regan v. School District*, 44 Wash. 523, 87 Pac. 828; *Pritchard v. Jacobs*, 46 Wash. 562, 90 Pac. 922.    The general purpose or spirit of the law must always be held in view.    *State ex rel. Chamberlin v. Daniel*, 17 Wash. 111, 49 Pac. 243; *Dennis v. Moses*, 18 Wash. 537, 52 Pac. 333, 40 L. R. A. 302.    This being a remedial statute, it should be beneficially rather than strictly construed.    *Becker & Degen v. Brown*, 65 Neb. 264, 91 N. W. 178.    Nonpayment of the license is not *ipso facto* a forfeiture of the corporate franchise, within the meaning of Const., art. 12, § 3, but a mere ground of forfeiture which the state can avail itself of only in a proper suit.    *Utah N. & C. R. Co. v. Utah & C. R. Co.*, 110 Fed. 879; *Bloch v. O'Conner Min. & Mfg. Co.*, 129 Ala. 528, 29 South. 925; *Ohio Nat. Bank v. Central Const. Co.*, 17 App. D. C. 524; *Detroit v. Detroit & H. Plank Road Co.*, 43 Mich. 140, 5 N. W. 275; *Petition of Philadelphia & M. R. Co.*, 187 Pa. St. 123, 40 Atl. 967.

*Post, Avery & Higgins*, as *amici curiae*, contended, *inter alia*, that in view of the acts relating to the voluntary dissolution of corporations only in case its debts are paid, it was not the intent of the legislature to bring about an involuntary dissolution by the act of the secretary of state, instead of by the superior court; and creditors should not be deprived of one remedy without furnishing another adequate remedy.    Cooley, Constitutional Limitations (5th ed.), pp.

352, 445; *Bettman v. Cowley,* 19 Wash. 207, 53 Pac. 53,
40 L. R. A. 815; *Palmer v. Laberee,* 23 Wash. 409, 63 Pac.
216; *Howard v. Ross,* 38 Wash. 627, 80 Pac. 819; *Bost v.
Cabarrus County,* 152 N. C. 531; 67 S. E. 1066; *Wilson v.
Brochon,* 95 Fed. 82; *Kaiser Land & Fruit Co. v. Curry,*
155 Cal. 638, 103 Pac. 341.    It is within the province of the
legislature to remit penalties that have been imposed at a
prior time to the enactment of the act of remission, and this
was one of the purposes of the act of 1911.    *Coles v. County
of Madison,* 1 Ill. 154, 12 Am. Dec. 161; *State of Maryland
v. Baltimore & Ohio R. Co.,* 3 How. 534; *Territory ex rel.
Castillo v. Perea,* 10 N. M. 362, 62 Pac. 1094.    The legisla-
ture could permit delinquent corporations heretofore stricken
to be reinstated.    Cooley, Constitutional Limitations (5th
ed.), 457, 458; *Mutual Benefit Life Ins. Co. v. Winne,* 20
Mont. 20, 49 Pac. 446.    The word "every" being a general
one, should be given a general construction unless there is a
clear intent expressed to restrict the meaning.    *Encking v.
Simmons,* 28 Wis. 272; *Tynan v. Walker,* 35 Cal. 634, 95
Am. Dec. 152; *Morgan v. Hamlet,* 113 U. S. 449.    Such a
construction should be made as will lead to beneficial results
and not to absurd or unjust consequences.    *Pierce v. City
Clerk of Spokane,* 7 Wash. 132, 34 Pac. 428; *Church of The
Holy Trinity v. United States,* 143 U. S. 457.

MORRIS, J.—This is an original application for a writ of
mandamus to the secretary of state, directing him to accept
certain fees from the relator and issue to it a license for the
fiscal year ending June 30, 1912.    The attorney general ap-
pears and files a demurrer on behalf of the respondent, and
as all the pertinent facts are embodied in the petition, a
question of law is submitted the disposition of which will con-
trol the writ.

The relator is a domestic corporation, engaged in the
lumber business at Preston, King county, and has been so
engaged since its incorporation in 1892.    Through the neg-

lect and oversight of its managing officials, it failed to pay to the state its annual corporation license fees for the fiscal years beginning July 1, 1904, and ending June 30, 1911. On September 22, 1911, this fact being discovered, it applied to the secretary of state to be reinstated, paying the sum of $10 license fee and $2.50 penalty for the years 1906 and 1907, and $15 license fee and $2.50 penalty for the years 1908 to 1912 inclusive. The secretary of state thereupon issued and delivered to the relator license certificates for these years. At the same time, the relator paid the sum of $100, further penalty for such neglect imposed under the act of 1911. On February 16, 1912, the relator tendered the secretary of state the sum of $15, in payment of its annual license fee for the year beginning July 1, 1912, and requested a certificate for that year, which was refused. Relator also, at the same time, tendered 25 cents in payment of a duplicate certificate for the year ending June 30, 1912, both of which tenders and requests were denied, and the relator thereupon filed its application for the writ.

In justification of his refusal, the secretary of state quoted to relator an opinion of the attorney general, to the effect that relator was, by operation of law, dissolved as a corporation prior to the issuance of the license certificates September 22, 1911, and that its reinstatement on that date was unlawful. The opinion of the attorney general to the effect above quoted was in response to an inquiry from the secretary of state, in which the secretary justified his issuance of these certificates and the reinstatement of relator, upon the ground that he was familiar with the objects and purposes of the framers of the act of 1911, and had interpreted the law accordingly in reinstating the relator. These facts will be sufficient to determine our answer upon the point involved. In order to do so, it will be helpful to review all legislation affecting the law as it now stands.

The act of 1907, being Rem. & Bal. Code, § 3715, provided, among other things, that the secretary of state should

strike from the records of his office the names of all corporations which had neglected for two years to pay the annual license fees. The act of 1909, extra session, being Rem. & Bal. Code, § 3715a, provided that any corporation whose name had been stricken for failure to pay its annual license fee for two years might apply to the secretary of state for reinstatement, at any time within six months from the approval of the act or from the time its name had been stricken. Section 2 of the same act, being Rem. & Bal. Code, § 3715b, further provided that any corporation so applying should, in addition to all license fees and penalties then due, pay an additional penalty of $25, and upon such payment such corporation would be reinstated. Section 4 of the same act, being Rem. & Bal. Code, § 3715d, provided that any corporation failing to make application for reinstatement within the time provided for such reinstatement should be thereby dissolved, and the secretary of state should enter a notation to that effect upon his official records. Sections 3715a and 3715b were amended by the act of 1911, chap. 41, page 135, whereby the six months' limitation, in which reinstatement might be made, was made to read "at any time after its name had been stricken," and the penalty was increased from $25 to $100. So that the law, as it now reads, provides that a corporation failing to pay its annual license fees for two years shall be stricken from the records of the office of the secretary of state; that every corporation so stricken may apply at any time thereafter for reinstatement, and when so applying shall be reinstated upon payment of all license fees and penalties then due, together with an additional penalty of $100. It will be noted that § 3715d, providing for the dissolution of the corporation for failing to apply within the time in which application might be made for reinstatement, which time was six months as fixed in the act of 1909, has now no force, since the act of 1911 changed the time in which such application might be made from six months to "any time after its name had been stricken from the records;" and,

since the dissolution was to take effect at the expiration of the time fixed in which application for reinstatement might be made, and that time is now, under the amendment of 1911, any time after the striking of the name, there is now no time fixed for such dissolution. Section 3715a, as amended by the act of 1911, reads, "any corporation stricken from the records and dissolved as provided in this chapter," may hold meetings and pass resolutions necessary to close out its affairs and such resolution of such "stricken and dissolved corporation" is validated and approved.

There is no provision, however, in this chapter for the dissolution of such corporation, as to how or when it shall take place; the only penalty to the offending corporation provided for in the act being the striking of its name from the official records of the secretary of state. The framers of this act evidently had in mind the provisions of § 3715d, which made provision for dissolution under the act of 1909. But they failed to fix a time in which the provisions of that section could become operative. The result is there is now no time in which this section, the only one containing any provision for the dissolution of corporations for failure to pay license fees, can become operative. When, therefore, relator applied to the secretary of state to accept its license fee, he should have done so, as it had made full compliance with the law, and within the time provided by the law in force at the time the application was made.

In construing legislative acts, we should look to the intent and purpose of the act. These respective acts were not primarily directed against corporations; they were revenue acts pure and simple, and the provisions directed against corporations were for the purpose of enabling the state to enforce the payment of its revenue and not leave it to the voluntary act of the corporation. The purpose of the several acts being determined, such construction should be given to them as will best meet that purpose, and do no violence to the language employed. That this was in the mind of the

legislature, is apparent from the act of 1911, whereby. the time .limit was removed and the penalty extended, thus inviting corporations stricken under the provisions of the former acts and remediless because of the six months' limitation, to seek reinstatement and by payment of the increased penalty add to the revenues of the state. The intent of the act being plain and its purpose beneficial, such intent and purpose should not be read out of it by judicial construction, if it can be preserved without doing violence to language or other legislative restrictions.

The attorney general suggests that to construe the act in favor of relator's contention would render it unconstitutional, under § 3, art. 12, of the constitution, prohibiting the legislature from remitting the forfeiture of any corporate franchise or charter. The striking of the names of delinquent corporations and the notation by the secretary of state that they were dissolved for failure to pay license fees, is not the forfeiture of a franchise or charter as meant by the constitution. The meaning of that provision undoubtedly is that corporate franchises shall be governed and controlled by general laws, as provided in § 1 of the same article, and that the legislature shall pass no act which shall extend any franchise created under general laws nor any act which shall restore any franchise which shall have been judicially determined to have been waived, lost or forfeited. A like constitutional provision was construed in *People ex rel. Sabichi v. Los Angeles Elec. R. Co.*, 91 Cal. 338, 27 Pac. 673, and it was held that acts sufficient to cause a forfeiture do not *per se* produce a forfeiture. The corporation continues to exist until the sovereignty which created it shall, by proper proceedings in a proper court, procure an adjudication of forfeiture and enforce it. See, also, *Ormsby v. Vermont Copper Min. Co.*, 65 Barb. 360; *Mickles v. Rochester City Bank*, 11 Paige 118; *Bloch v. O'Conner Min. & Mfg. Co.*, 129 Ala. 528, 29 South. 925; *Utah N. & C. R. Co. v. Utah & C. R. Co.*, 110 Fed. 879; *Detroit v. Detroit & H. Plank-Road Co.*, 43

Mich. 140, 5 N. W. 275; *In re Philadelphia & M. R. Co.*, 187 Pa. St. 123, 40 Atl. 967.

Under the laws of West Virginia, corporations pay an annual license fee of $10, and it is provided that any corporation failing to pay such license fee shall forfeit its charter, which forfeiture shall be declared by publication by the state auditor. In construing this provision, it has been held that the nonpayment of a license tax, as any other cause of forfeiture, can only be taken advantage of by direct proceedings for that purpose against the corporation. *Greenbrier Lum. Co. v. Ward*, 30 W. Va. 43, 3 S. E. 227. In *Ohio Nat. Bank v. Central Const. Co.*, 17 App. D. C. 524, the court cites the rule of the *Ward* case and adds: "Mere proclamation by an executive officer will not accomplish the result." Rem. & Bal. Code, § 1034, makes express provision for filing an information in the nature of quo warranto against any corporation which has done or omitted any act which amounts to a surrender or forfeiture of its corporate rights and privileges. We are therefore of the opinion that the act of the secretary of state in striking the corporation from the records of his office, or in noting it as dissolved for failure to pay its license fees, was not a forfeiture of the corporation, so that any act of the legislature providing for a reinstatement of such corporation would be void as the remission of a forfeiture.

From this reasoning it follows that relator is entitled to relief, and the writ as prayed for is granted.

DUNBAR, C. J., MOUNT, and ELLIS, JJ., concur.