DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 13494. Department Two. August 30, 1916.]

JAMES S. GRANT et al., Appellants, v. MONTEREY GOLD
MINING COMPANY et al., Respondents.[1]

CORPORATIONS—DISSOLUTION ON INSOLVENCY—DISPOSITION OF AS-
SETS. Rem. 1915 Code, § 3715a, providing that a corporation whose
name had been stricken for nonpayment of its license fees may
hold a meeting of its stockholders and pass such resolutions as may
be necessary to close out its affairs and wind up its business, modifies
the former act, Rem. 1915 Code, § 3715d, providing that such a cor-
poration is dissolved and the directors shall hold the property for
the benefit of stockholders and creditors; and the stockholders may
meet and dispose of all assets by a sale to another company assum-
ing the indebtedness, in consideration of an exchange of its shares,
and are not limited to the statutory procedure for a dissolution.

SAME—DISSOLUTION ON INSOLVENCY—SALE OF ASSETS—EXCHANGE
OF STOCK—MINORITY STOCKHOLDERS—ASSENT. Minority stockholders
of an insolvent corporation who assented or agreed to the acceptance
of an exchange of stock in another corporation purchasing all the
assets and assuming all the debts, cannot, two years later, be heard
to object that the insolvent corporation had no power to wind up
its affairs by such sale.

Appeal from a judgment of the superior court for Spo-
kane county, Jackson, J., entered November 4, 1914, in
favor of the defendants, in an action for equitable relief, tried
to the court. Affirmed.

O. C. Moore, for appellants.

Burcham & Blair, for respondents.

[1]Reported in 159 Pac. 895.

BAUSMAN, J.—The Monterey Company, having a capital of one million paid and non-assessable shares, owned certain mines mortgaged for advances from some of its directors. The security being overdue in March, 1911, the company much in other debts, and a foreclosure being threatened, the shareholders were called to meet in April.

The call proposed final action upon the company's affairs, and the shareholders resolved to accept the proposal of a new company, the Bolster Mining Company, organized by some of the Monterey shareholders, to buy the Monterey Company's mines, assuming the latter's indebtedness and exchanging its own shares on a certain basis with the retiring shares of Monterey. The Bolster stock, however, was to be assessable to the extent of a twentieth. The Monterey Company conveyed to the Bolster Company as early as August of 1911, and has no remaining assets.

Before all this, the company's license fees had been delinquent more than two years; so, under Rem. 1915 Code, § 3715d, its name had been stricken by the secretary of state. According to that section, the directors must thereafter hold the property of the delinquent company "for the benefit of its stockholders and creditors to be disposed of under appropriate court proceedings." That was an enactment of 1909 which however, must be read today with one of 1911, page 135, § 1 (the present Rem. 1915 Code, § 3715a, providing that, though the corporation be thus stricken and dissolved, it may

"at any time thereafter hold a meeting of stockholders, in the same manner as provided during its corporate existence, and pass such resolutions as may be necessary to close out its affairs and wind up the business of such corporation, and where such stricken and dissolved corporation has heretofore held such meetings of stockholders for the purpose of passing resolutions to wind up their affairs, such method of procedure is hereby validated and approved."

A meeting being clearly authorized by this law, the only contention left is whether the statute restricts it to proceed-

ings for a drastic sale of assets or whether the meeting may close the company's affairs in some other way also. The latter option we unhesitatingly pronounce. This statute has frequently been interpreted as a revenue measure. *State ex rel. Preston Mill Co. v. Howell*, 67 Wash. 377, 121 Pac. 861, and the delinquent is presumably penalized under it by the expense and inconvenience of new organization.

The complaining minority shareholders, accordingly, can allege here no violation of the statute, but must maintain their case for a receivership and a restoration of the Monterey Company's assets on some violation of general corporation law.

The majority plan of reorganization through a new company was apparently based on *Pitcher v. Lone Pine-Surprise Consol. Mining Co.*, 39 Wash. 608, 81 Pac. 1047, but it is unnecessary to say whether that plan shall be again approved by this court, because there is here decisive acquiescence. That a minority shareholder cannot be compelled, even in corporate distress, to accept shares in a new company may be conceded (*Mason v. Pewabic Mining Co.*, 133 U. S. 50), but he has a right to agree to do so, and this record is convincing that all the plaintiffs did agree, some by assent and others by actual exchange. The latter are manifestly silenced, while as to the former, they will not be heard to object now, for though the Monterey Company conveyed in August, 1911, this suit was not begun until March, 1913, not indeed until proceedings by the Bolster Company to sell some of the exchanged shares for unpaid assessments.

We are obliged to consider such delay fatal to all these plaintiffs, who, it may be added, did not bring their suit in behalf of all other shareholders that might join and contribute to the expense, but only for themselves.

Judgment affirmed.

MORRIS, C. J., MAIN, FULLERTON, and PARKER, JJ., concur.