PILLAR ROCK PACKING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70485. Promulgated May 15, 1936.

*Robert T. Jacob, Esq.* for the petitioner.
*R. P. Hertzog, Esq.* for the respondent.

OPINION.

ARUNDELL: The issue here is whether the transaction between petitioner and the New England Fish Co. comes within the statutory definition of a reorganization (Revenue Act of 1928, sec. 112 (i) (1)) and is therefore taxable only to the extent of the cash and notes received (secs. 112 (b) (4) and (d) (1)). Petitioner argues that either (1) the transaction is a merger within the ordinary and accepted definition of that term, or (2) it comes within the parenthetical enlargement of the term which deals with cases where substantially all the assets of one corporation are acquired by another corporation.[1]

It is not suggested that petitioner and the New England Fish Co. complied with any requirements for consummating a "merger" provided by the statutes of the states of their creation, but petitioner apparently assumes that transactions other than statutory mergers are included in the term "merger", apart from the parenthetical enlargement which follows it in the reorganization definition. We have not heretofore passed upon this point, although we have held that, where a consolidation or merger is undertaken pursuant to statute, the statute must be strictly complied with. *Alice V. St. Onge*, 31 B. T. A. 295 (pending before C. C. A., 1st Cir.). However, passing the question of whether a merger within the meaning of the revenue act can exist in the absence of proceedings under a state statute in terms authorizing "merger", we must hold the transaction here is not a merger even within the general definitions of that term. Merger has been defined as follows:

As applied to corporations, the terms "merger" and "consolidation" have well known legal meanings. While the result is practically the same in either event, there is this difference. In a merger one corporation absorbs the other and remains in existence while the other is dissolved. In a consolidation a new corporation is created and the consolidating corporations are extinguished. In either event, the resulting corporation acquires all the property, rights and franchises of the dissolved corporations, and their stockholders become its stockholders. *Royal Palm Soap Co.* v. *Seaboard Air Line Ry. Co.* (C. C. A.) 296 F. 448; Bouvier's Law Dictionary (3d Ed.) p. 2202, verbo "merger." [*Pinellas Ice & Cold Storage Co.* v. *Commissioner of Internal Revenue*, 57 Fed. (2) 188.]

Numerous definitions of the words "merger" and "consolidation" may be found in the reports, state and federal, but though the definitions differ, there is practical agreement that, when employed to define forms of union between two corporations, a merger is said to take place when one of the corporations retains its existence and succeeds to the franchises and acquires the property and assets of the other; whereas a consolidation under similar circumstances occurs where all the corporations involved become extinct and go out of existence

---

[1] SEC. 112 (i) (1). The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation).

as separate organizations and a new and different corporation is created to take over the assets of the dissolved corporations.

Judge Hand recently, in a case involving the statute we are here concerned with, defined the term "merger" as an "absorption" by one corporation of the properties and franchises of another whose stock it has acquired. In that case he said: "The merged corporation ceases to exist, and the merging corporation alone survives," and at the same time he defined the term "consolidation" as involving a dissolution of the companies consolidating and a transfer of corporate assets and francises to a new company. *Cortland Specialty Co.* v. *Commissioner* (C. C. A.) 60 F. (2) 937, 939. [*Fordyce* v. *Helvering*, 76 Fed. (2) 431.]

See also *Von Weise* v. *Commissioner*, 69 Fed. (2d) 439.

The transaction here meets none of these definitions. The petitioner corporation was not absorbed in or swallowed up by the New England Fish Co.—this for two reasons: First, petitioner retained a substantial part of its assets. It is argued that the retained assets should be disregarded as they were accounts receivable due from the partnership and the same persons owned substantially identical interests in both enterprises. Even if this be important, the facts as found do not disclose a substantial identity of interest by the same persons in both the partnership and petitioner. We may not therefore disregard the retained accounts as assets unless, for example, they had been transferred in liquidation prior to the transfer to the New England Fish Co. Cf. *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378. Secondly, the instant transaction falls short of a merger because the petitioner corporation remained in existence. The parties assumed that its existence continued for only two years after the transaction in question, at which time it was struck from the files of the Department of State of the State of Washington for failure to pay annual license fees. The law of Washington would indicate, rather, that such striking does not amount to a dissolution (sec. 3843, Wash. Rev. Stats.; *State ex rel Preston Mill Co.* v. *Howell*, 67 Wash. 377; 121 Pac. 861; *Moore* v. *Los Lugos Gold Mines*, 172 Wash. 570; 21 Pac. (2d) 253. Cf. *Lang Body Co.*, 16 B. T. A. 728). In either event, we think that a merger requires early dissolution of the corporation which is absorbed in another. This is not required under the parenthetical enlargement of the term "merger" which follows it in the statute *Helvering* v. *Minnesota Tea Co.*, *supra*) but is, we think, required to make the transaction a "strict", "true", or "technical" merger.

As to petitioner's further contention that the transaction here falls within the parenthetical enlargement of the term "merger" in that substantially all of its assets were transferred to the New England Fish Co., we find that under the most favorable method of computation (see *Western Industries Co.*, 30 B. T. A. 809, and *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937) only approximately two-thirds of its assets can be said to have been conveyed.

There were $45,294.52 of accounts receivable which were retained as against a cost of assets transferred of $60,536.06 and a selling price of $94,591.50. There is no showing that the retained accounts receivable were canceled out or written off the books as a result of the transaction with the New England Fish Co. Under this state of facts, we do not think that "substantially all" of the assets were transferred. *Arctic Ice Machine Co.*, 23 B. T. A. 1223.

*Judgment will be entered for respondent.*