[No. 10158.   Department Two.   September 14, 1912.]

JOHN A. SODERBERG *et al., Respondents*, v. A. C. McRAE
*et al., Appellants.*[1]

TRUSTS—CONSTRUCTIVE TRUSTS—ACQUISITION OF PROPERTY FOR COR-
PORATION—FRAUD—FIDUCIARY RELATION OF AGENT.  Where, by a mis-
take in the description, one forty of a lime quarry belonging to and
developed by a corporation had been conveyed away in an exchange,
and the grantee, acknowledging the mistake, sought to correct the
same by reconveying the forty to one who was at the time under
a contract with the corporation to promote its interests in the de-
velopment of the quarry, such agent holds the same in trust for
the corporation and could not, while occupying a fiduciary relation,
secretly obtain the title and assert it adversely to the corporation.

CORPORATIONS—DISSOLUTION — ACTION BY TRUSTEES.  Where the
secretary of state has dissolved a corporation for nonpayment of its
license fees, it is deemed effective until set aside, and an action
to recover its property may be maintained by the only trustee who
is a stockholder, in view of Rem. & Bal. Code, § 3715d, providing
that on such dissolution, its trustees hold its property for the bene-
fit of its stockholders and creditors.

CORPORATIONS—STOCK—TRANSFERS IN BAD FAITH—STOCK PLEDGED
—POSSESSION.  Where corporate stock was pledged by two promoters
as collateral to a note, which was paid by one of them, who there-
upon took the stock and held it until transferred to him in satis-
faction of a judgment in his favor for contribution, an assignment,
*pendente lite*, to a third person by the defendant who did not have
possession or control of it, not made in good faith, is ineffectual
and void.

TRUSTS—CONSTRUCTIVE TRUSTS—ENFORCEMENT — CONDITIONS PRE-
CEDENT—REIMBURSEMENT OF TRUSTEE.  One acting in a fiduciary ca-
pacity for a corporation in secretly obtaining title to property be-
longing to the company which it had exchanged by mistake, is en-
titled, on being adjudged a trustee in equity, to reimbursement for
the consideration which he was compelled to pay to secure the title,
especially where the consideration was paid to one entitled to de-
mand it, and the title could not have been secured on more favor-
able terms.

Appeal from a judgment of the superior court for San
Juan county, Joiner, J., entered October 3, 1911, in favor

[1]Reported in 126 Pac. 538.

of the plaintiffs, after a trial on the merits before the court, in an action for equitable relief. Modified.

*George McKay, James Kiefer,* and *R. E. Morris,* for appellants.

*Shank & Smith,* for respondents.

MORRIS, J.—The facts in this case are complicated and difficult of statement and we shall not attempt to recite them all, contenting ourselves with only such a review of them as is necessarily involved in the discussion of the conclusions we have reached. Respondents commenced the action to obtain a conveyance of a certain forty acres on Orcas island, valuable as containing a deposit of lime rock. The title to this forty was, prior to December, 1904, in M. H. Walter, and was on that day, through error in the description, conveyed to the Orcas Lime Company in exchange for another piece known as lot one. The following November, Walter and Soderberg organized the Puget Sound Portland Cement Company, for the purpose of developing lime deposits on Orcas island, including the forty acres in suit, Soderberg having previously purchased from Walter an undivided one-half interest in certain properties owned by Walter, and which were supposed to cover by their legal description the lime quarry, which the parties intended to operate in the name of the corporation subsequently organized. Soderberg and Walter then conveyed their interest in these lands to the corporation in exchange for its stock, and the corporation then proceeded to open up the ledge of lime rock on this forty, supposing it had title to the same, and expended in this work $14,000. In December, 1905, Walter discovered that a mistake had been made in conveying this forty to the Orcas Lime Company and, without informing Soderberg, entered into negotiations with the Orcas Lime Company to have the mistake corrected. The result of these negotiations was a conveyance by the Orcas Lime Company to A. C. McRae, who

was at the time under a contract with the company to pro-
mote its interests in the development of the lime quarry, this
conveyance being made to McRae at the request of Walter.

At the time of the first transaction between Soderberg,
Walter and the Orcas Lime Company, as part consideration
of the lands conveyed, two notes of $10,000 each were given
by the Orcas Lime Company to Walter, secured by a mort-
gage on the lands, the mortgage containing conditions as to
when and under what circumstances relative to the produc-
tion of lime from the lands purchased the notes should be
payable.  These notes had passed into the hands of McRae
under a settlement of a suit founded upon the promoter's
contract with Soderberg and Walter.  Payment of these
notes was refused by the Orcas Lime Company, it claiming
that the conditions in the mortgage under which the notes
were payable had not ripened.  Subsequently the notes were
used in negotiation between the Orcas Lime Company and
Walter and McRae whereby the title to the forty passed to
McRae.  Shortly after, McRae went east and does not again
appear upon the scene for about two years.  The Puget
Sound Company in the meantime continued its operations
upon this forty, Soderberg not having been apprised of any
of the facts surrounding the discovery of the error in con-
veying the forty, nor the negotiations between Walter, Mc-
Rae and the Orcas Lime Company whereby title to the forty
passed to McRae.  When Soderberg and Walter organized
the Puget Sound Company, they borrowed $10,000 from
the Scandinavian-American Bank of Seattle, pledging the
stock of the company as collateral.  This note was taken up
by Soderberg, the stock delivered to him, and he commenced
suit against Walter for contribution on the note, resulting
in judgment and an assignment from Walter of his half of
the stock in satisfaction of the judgment.  This Puget Sound
Company was subsequently dissolved by the secretary of
state for nonpayment of license fees.  Its property has since
been in the possession of Soderberg, who has paid the taxes

and preserved the property. McRae and Walter had in the meantime organized another company, known as the Pacific Coast Portland Cement Company, and McRae had obtained from Walter a transfer to this company of Walter's stock in the Puget Sound Company.

We have not attempted to state all the facts entering into these transactions. There are others which throw side lights on the relations between the parties, and the attempts of Walter and McRae to possess themselves of the property in issue without the knowledge of Soderberg. Respondents' theory, which was adopted by the court below, is that McRae occupied such a fiduciary relation to the company that he could not use the information or knowledge he obtained adversely to the interest of the company and seek to set up an adverse title in himself, but that he should be held as trustee for the company. In attempting to realize upon the notes he secured in settlement of his controversy with Soderberg and Walter, McRae was justified in seeking to obtain, in satisfaction of his claim against the Orcas Lime Company, as favorable a settlement as he could. The law, however, will not protect him when in his endeavor to do so he secretly acquires property which he seeks to use against the interest of the company to whose interest he had pledged his good faith. It is apparent that the Orcas Lime Company was claiming no rights to this forty under the conveyance from Walter. Subsequent to the time it had procured a survey and learned of the error in description, it had held itself only as the legal holder of the title for the rightful owner. Under this situation, McRae, who had united his interest with that of the company in the effort to so promote its interest as to make its property valuable, could not act adversely to that interest in the obtaining of this title, and seek to assert it adversely to the company whose interest he was bound to protect. The law casts a jealous eye upon one standing in the relation of McRae. It requires, so long as he maintained his fiduciary relation with the company, that he should in

all things seek to further its interest. To secretly obtain title to that which it regarded as its property and then attempt to use that title adversely to the rights of the company is to invite defeat from a court of equity. These principles are so well established as not to require citation to support them.

Some question is raised as to the form of the action, appellant contending that, under the authority of *State ex rel. Preston Mill Co. v. Howell*, 67 Wash. 377, 121 Pac. 861, the Puget Sound Company has not been dissolved and it only could maintain this action. Its attempt to do so, however, would be useless, because of its failure to pay its license tax. We can find no question involved in the *Howell* case properly an issue in this suit. No question is raised by the corporation itself as to the effect of the act of the secretary of state in entering the order of dissolution on February 23, 1910. Nor is the corporation here seeking to reinstate itself by offering to pay arrears of license. So far as the dissolution of the corporation is concerned, it must be so regarded until, in some appropriate proceedings, it is decreed otherwise. Under Rem. & Bal. Code, § 3715d, upon the dissolution of a corporation, its trustees hold its property for the benefit of its stockholders and creditors. Under this statute, we have no doubt the trustees could maintain proceedings to acquire such possession. The only trustee of this corporation who is now a stockholder, or was at the time of its dissolution, is Soderberg. Under these circumstances, we find no objection to the power of the court to enter the decree appealed from.

Neither do we think the Pacific Coast Company has any standing as claimant of Walter's stock in the Puget Sound Company. This stock was never in the possession nor under the control of Walter from the time it was given to the Scandinavian-American Bank as collateral to the $10,000 loan. When Soderberg paid the loan, he took the stock and held it until Walter transferred it to him in satisfaction of the judgment in the action by Soderberg against Walter for

contribution because of the payment of the $10,000 note. The assignment to the Pacific Coast Company was during the pendency of this last suit. We are not impressed with its good faith. Its purpose is apparent and the attempted transfer was void.

It is next contended by appellant that, even though his contention as to the ownership of the forty should be denied, he is still entitled to be reimbursed the price he paid for it. This contention must, we think, be sustained. Otherwise the Puget Sound Company or Soderberg would have both the forty and the tract known as lot one which was exchanged for the forty. It also would result in the Puget Sound Company retaining the benefit of its settlement of the suit brought by McRae, and deprive McRae of what was given to him in the same compromise. It is not claimed there was any fraud in this settlement, and McRae, though he loses the title to the forty, is entitled to retain the benefit of his compromise, whereby he obtained the two $10,000 notes which were the basis of the settlement with the Orcas Lime Company, whereby he obtained $2,000 in cash, notes aggregating $8,000, and the deed to the forty. It is, we think, clear from the testimony of Mr. Dally, president of the Orcas Lime Company, that, while he intended to insist upon the performance of the conditions of the mortgage securing these two notes, in any attempt to enforce their collection, he was satisfied that his company had obtained full value for them, and that one of these notes was charged against the forty in the settlement with McRae. The entry on the books of the company on July 30, the date of this settlement, shows bills payable debit, and real estate account credit, to the amount of $10,000, by the transfer of the forty to McRae in lieu of one of the notes. This entry concludes "per instructions of Mr. Walter," and respondents urge that this evidences a fraudulent purpose on the part of Walter to make the entry read differently from the transaction.

It seems to us, however, the natural meaning of the entry is that the deed was given to McRae on instructions from Walter. The Orcas Lime Company had received this property from Walter, and if it is to be conveyed to another person under instructions from Walter, it was but natural to so indicate in the entry. There is nothing in the record to indicate that the Orcas Lime Company received any other property or thing of value in exchange for this forty. It was certainly entitled to receive some consideration for its conveyance. The mistake, which seems to have been conceded, was in giving the wrong description to the lands purchased, and not that the Orcas Lime Company was not entitled to a conveyance of some description from Walter. It had obtained this title from Walter in exchange for lot one, and it was justified in fixing a consideration for its return. Even though, as we have held, McRae holds the forty in trust for the company he was representing and to whom he owed good faith, it could not require him to act for it unless it is willing to pay the consideration he was compelled to pay in order to acquire the property. This consideration the company received the full benefit of when it compromised the McRae litigation. Equity will not permit it to retain the benefit thus derived and deprive McRae of the consideration he received for that benefit. It does not appear that Soderberg could have obtained title to this forty on terms different from or more favorable than those on which McRae obtained it; and if we hold the conveyance was for his benefit, we must likewise hold the consideration paid was also for his benefit, and charge him with it. All parties are thus equitably dealt with. Soderberg retains lot one and obtains the forty, the Orcas Lime Company receives a consideration for its conveyance of lot one, and McRae receives the $20,000 Soderberg conceded he was entitled to at the time these notes were delivered to him in settlement of his claim against Soderberg and Walter.

We therefore hold that the decree appealed from should be modified to the extent of making the transfer of the forty from McRae to Soderberg conditioned upon the payment of $10,000. The cause is remanded with instructions to so modify. Appellant will recover costs of this court.

Mount, Ellis, Chadwick, and Fullerton, JJ., concur.