[No. 13716. Department Two. June 22, 1917.]

C. I. PECK *et al.*, *Appellants*, v. W. H. LINNEY *et al.*, *Respondents.*[1]

CORPORATIONS—DISSOLUTION—STATUTES—EFFECT—ACTIONS. A corporation, delinquent in its license fees, is dissolved by the secretary of state's notation of dissolution entered upon its failure to apply for reinstatement within six months, pursuant to Rem. Code, § 3715d, which provides that thereupon the corporation shall be dissolved and its property shall vest in the trustees; so that the corporation cannot be thereafter sued by service of process upon its president, or jurisdiction acquired of an action to foreclose a tax lien on its property without making the trustees parties.

SAME—DISSOLUTION—LICENSE FEES—CONSTITUTIONAL LAW — DUE PROCESS OF LAW. Rem. & Bal. Code, § 3715, providing that the names of corporations shall be stricken from the records of the secretary of state and the corporation dissolved for failure to pay the annual license fees, unless reinstated under § 3715a, is not unconstitutional as violative of the due process clauses of the state or Federal constitutions.

SAME—DISSOLUTION—VALIDITY—PREMATURE ENTRY. Under Rem. Code, § 3715d, providing for the dissolution of delinquent corpora-

[1]Reported in 165 Pac. 1080.

tions failing to apply for reinstatement within six months, by the entry of a notation by the secretary of state upon his records, a dissolution is not invalid from the fact that the secretary made the notation one day too soon, where the record was left standing subsequent to the time when it ought to have been made, since the making of the notation was a ministerial act.

SAME—DISSOLUTION—STATUTES—AMENDMENT— EFFECT — ACTIONS. Where a corporation was stricken from the records and dissolved under the act of 1909, Rem. & Bal. Code, § 3715a-3715d, for failing to pay its license fees or apply for reinstatement within six months, prior to the amendment of that act by the act of 1911, Rem. Code, § 3715a, which authorized a reinstatement of stricken corporations at any time and rendered the former provision for dissolution inoperative, such dissolution is effectual while the corporation remains in a dormant condition, so that it cannot be sued in the absence of any steps for its reinstatement.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered July 12, 1916, in favor of the defendants, dismissing an action for equitable relief, tried to the court. Reversed.

*Carey & Johnson*, for appellants.
*A. E. Gallagher*, for respondents.

PARKER, J.—The plaintiffs, as stockholders of the Old Dominion Mining & Milling Company, a corporation, alleged to have been dissolved as the result of the failure to pay its annual license fees, seek a decree quieting title to certain mining claims in the trustees of that corporation, as against the defendants, and cancelling the tax deed upon which the claim of title made by the defendants is rested. The action is prosecuted by the plaintiffs as stockholders because of the refusal of the trustees of the corporation to do so upon demand made therefor by the plaintiffs. Trial upon the merits in the superior court for Spokane county, to which court the cause was transferred by consent from the superior court for Stevens county, resulted in judgment of dismissal as against the plaintiffs, from which they have appealed to this court.

The facts determinative of the rights of the parties are not in dispute and may be summarized as follows: The Old Dominion Mining & Milling Company was duly incorporated under the laws of the state of Washington in the year 1897. It thereafter acquired title to the patented mining claims in question. It failed to pay to the state its annual license fees for several years prior to August 23, 1909, as required by § 6, ch. 140, Laws of 1907, p. 271, being Rem. Code, § 3714. On that day, because of such failure to pay its license fees, the secretary of state struck from the records of his office its name, in pursuance of the provisions of § 7, ch. 140, Laws of 1907, p. 271, being Rem. Code, § 3715; and it not having made application for reinstatement upon the records of the office of the secretary of state as prescribed by chapter 19, p. 57, Laws of the Extraordinary Session of the legislature of 1909, as the secretary of state construed that act, he, on February 23, 1910, entered upon the records of his office a notation that the Old Dominion Mining & Milling Company was dissolved. This, it will be noticed, was done just six months after striking the name of the corporation from the records of his office in pursuance of the provisions of the act of 1907. Rem. Code, § 3715.

On November 5, 1914, respondent W. H. Linney was the owner of a delinquent tax certificate issued by the treasurer of Stevens county for delinquent taxes upon the mining claims in question. On that day he commenced an action in the superior court for that county against the Old Dominion Mining & Milling Company, seeking foreclosure of his certificate of delinquency and the sale of the claims. That action resulted in judgment of foreclosure and order of sale on January 18, 1915. In pursuance thereof a sale was had of the mining claims and a tax deed issued by the county treasurer conveying the claims to respondent W. H. Linney on January 30, 1915. Thereafter respondent The Dominion Silver-Lead Mining Company acquired, by deeds of conveyance from Linney and wife, whatever title to the claims they

had acquired by virtue of the tax foreclosure and deed issued in pursuance thereof.

The service of the summons in the tax foreclosure proceeding was attempted to be made upon the Old Dominion Mining & Milling Company by serving the same upon G. B. Dennis, as the president of that corporation, and not otherwise. G. B. Dennis was the president of the corporation at the time the secretary of state noted upon the records of his office its dissolution. None of the trustees of the corporation were ever served with summons in the tax foreclosure proceeding or made parties thereto, nor did any of them ever appear in that proceeding; so that whatever jurisdiction the court acquired therein was only such as could be acquired over the corporation as an entity, apart from its trustees and stockholders, after the secretary of state noted its dissolution upon his records.

It is conceded that appellants, as stockholders of the Old Dominion Mining & Milling Company, are in a position to maintain this action because of their demand upon the trustees of that corporation to prosecute it and the refusal of the trustees to accede to that demand. It is also conceded that the tax foreclosure proceeding, the judgment, the sale rendered thereon, and the tax deed issued in pursuance thereof to W. H. Linney vested title to the claims in him, if the court acquired jurisdiction in that proceeding by service of summons upon G. B. Dennis as president of the corporation.

In § 7, ch. 140, Laws of 1907, p. 271 (Rem. Code, § 3715), we read:

"It shall be the duty of the secretary of state to strike from the records of his office the names of all incorporations which have neglected for a period of two years to pay their annual license fees;"

This is the law in compliance with which the secretary of state struck the name of the Old Dominion Mining & Milling Company from the records of his office on August 23, 1909. This provision of the law has remained unchanged to the

present time. Chapter 140, Laws of 1907, p. 270, made no provision for reinstatement of the name of a corporation upon the records in the office of the secretary of state which had been stricken as therein provided. Neither did the law tell us, in terms, what effect such striking of the name of a corporation had upon its life, that is, whether or not such striking of its name had the effect of dissolving it. Chapter 19, p. 57, Laws of the Extraordinary Session of the legislature of 1909, provided for reinstatement of a corporation's name upon the records of the office of the secretary of state within six months following the striking of it therefrom upon payment of certain penalties. Section 4 thereof reads:

"If, however, within the period named within which a corporation may make application to be reinstated such corporation shall not have made such application, the secretary of state shall enter upon his records a notation that such corporation is dissolved, and it shall thereupon be dissolved and the trustees of such corporation shall hold the title to the property of the corporation for the benefit of its stockholders and creditors to be disposed of under appropriate court proceedings."

This is the provision in pursuance of which the secretary of state noted upon his records the dissolution of the Old Dominion Mining & Milling Company on February 23, 1910, six months after he had stricken its name from his records. This section was embodied in Rem. Code as § 3715d, though, as we shall presently see, under a later law, chapter 41, Laws of 1911 (Laws 1911, p. 135; Rem. Code, § 3715a), corporations are no longer dissolved in this manner. That law, however, was not passed until after the Old Dominion Mining & Milling Company had been dissolved under the law of 1909.

It is contended, in substance, in respondents' behalf that the failure of a corporation to pay its annual license fees, the striking of its name from the records of the office of the secretary of state, and the notation of its dissolution by the secretary of state upon his records did not, under the act of 1909, actually work a dissolution of the corporation, but only

constituted a cause for dissolution by appropriate court proceedings. This contention is answered by our decision in *Hawley v. Bonanza Queen Min. Co.*, 61 Wash. 90, 111 Pac. 1073, where it was held that the notation of dissolution, when made in compliance with the law of 1909, did work a dissolution of the corporation, and that an action pending against the corporation at the time it was so dissolved would abate, unless the corporation's successors in interest, its trustees, or possibly its receiver, were substituted as parties to the action in place of the corporation. Judge Rudkin, in so holding, speaking for the court at page 93, said:

"The appellant contends that this rule does not obtain in equity, but we apprehend that a defendant to proceed against is just as essential in one court as in another, except where the proceedings are strictly *in rem*. In actions to foreclose mortgages or liens on real property the owner of the property is a necessary party defendant, and if he dies during the pendency of the action his heirs or successors in interest must be brought in. The same rule applies of necessity to a defunct corporation. Had the receiver been served in this case, the action might have proceeded to judgment against him, notwithstanding the dissolution of the corporation; or the trustees, in whom title vests upon dissolution, might have been substituted as defendants, but nothing of that kind was done or attempted. The appellant persisted in his right to proceed against the corporation notwithstanding its dissolution, and the court had no alternative but to abate the action."

In the light of that decision, which we are not inclined to recede from, we see no escape from the conclusion that the Old Dominion Mining & Milling Company was dissolved upon the making of the notation of its dissolution by the secretary of state, assuming for the present that such notation was authorized by the facts and timely made. It seems to plainly follow that, since a pending action against a corporation at the time of its dissolution in pursuance of the law of 1909 abated upon such dissolution, unless its successors in interest be substituted in its place as parties thereto, it could not be

sued, and no process could reach it as a corporate entity giving a court jurisdiction over it or its property which had passed to its trustees upon dissolution.   Manifestly, if a pending case cannot proceed against a dissolved corporation, one could not be instituted against such a corporation.

It is further contended in behalf of respondents that the law of 1909, in so far as it provided for dissolution of corporations, is unconstitutional as being in violation of the due process of law provisions of both the state and Federal constitutions.   This contention is also answered by our decision in *Hawley v. Bonanza Queen Min. Co., supra.*   Judge Rudkin, speaking for the court, observing:

"It is next contended that the acts of 1907 and 1909, *supra,* which provide for the dissolution of corporations failing to pay their annual license fees, or to apply for reinstatement within a limited time, are unconstitutional and void, because a forfeiture of corporate franchises can only be decreed by a court of competent jurisdiction.   This position is untenable.   A corporation is a mere creature of the law, and the privilege of being and acting as a corporation is contingent upon a compliance with the law.   The appellant concedes that it was competent for the legislature to provide for the dissolution of corporations failing to pay their annual license fees, but contends that the forfeiture can only be declared after a hearing in some court of competent jurisdiction.   This question was ably reviewed in all its aspects by the supreme court of California in the recent case of *Kaiser Land & Fruit Co. v. Curry,* 155 Cal. 638, 103 Pac. 341, where a similar act of that state was sustained."

In the light of these remarks, made in the course of that decision, we deem it unnecessary to further notice the constitutional question presented, and conclude that the dissolution provision of the law of 1909 was not unconstitutional.

It is further contended in respondents' behalf that the notation of the dissolution of the Old Dominion Mining & Milling Company as a corporation upon the records of the office of the secretary of state was a void and unauthorized act and did not, at the time it was made nor thereafter,

legally evidence the dissolution of that corporation. Counsel for respondents insist that the full six months' period prescribed by the law of 1909, above quoted, within which the Old Dominion Mining & Milling Company might have applied for reinstatement, had not expired at the time the notice of dissolution was made by the secretary of state. The general rule that, in computing time within which an act is to be done as prescribed by law, the first day shall be excluded and the last day included, is invoked in respondents' behalf. This rule does seem to lend support to the contention that the secretary of state made his notation of the dissolution of the corporation one day too soon, since it seems to have been made upon the last day of the six months' period prescribed; though, looking to the language of the act of 1909, there is also room for arguing that the notation was not made a day too soon. However this may be, we are of the opinion that, since, on the following day, the notation remained of record in the office of the secretary of state, which was, of course, with his knowledge, it then had all the effect as if made upon that date. The act of 1909 did not provide for any particular form of making the notation of dissolution, not even that it should be dated, nor was the making of it under that law to be the result of any hearing or determination of any fact outside the records of the secretary's office. His act of noting the dissolution of the corporation, we think, was purely ministerial under the law of 1909. It was not the notation which dissolved the corporation, though sometimes loosely so referred to. That was only the doing of an act the occurrence of which, together with the fact of the corporation's default, worked its dissolution. We think it can thus be differentiated from a decree of a court of equity dissolving a corporation. If, when the time for making the notation of dissolution arrived, assuming that such time had not arrived when this notation was physically made, the secretary had looked at his records and seen this notation thereon and had then erased it and immediately rewritten it in the exact words, plainly it

could not be contended that that was not a literal compliance with the act of 1909. We can see no difference in legal effect when the secretary knowingly leaves a notation on his records which may have been previously erroneously put there, though at the time he so leaves it it speaks correctly, except possibly as to the date when physically made. One could as well complain of a notation made by one of the secretary's clerks instead of himself, but plainly that would be in law the making of it by himself, if done with his knowledge and under his direction. The leaving of the notation by him at a time when it ought to have been made, we think, was equally a compliance with the law of 1909, in view of the ministerial character of the act of making the notation.

After the dissolution of the Old Dominion Mining & Milling Company on February 23, 1910, the legislature of 1911 passed an act amending the 1909 law so as to permit a corporation whose name had been stricken from the records of the office of the secretary of state to have its name reinstated upon the records *at any time* upon payment of certain penalties, and in effect repealing the dissolution provisions of the law of 1909. Considering the effect of the act of 1911 touching its repealing effect upon the dissolution provision of the law of 1909, Judge Morris, speaking for the court in *State ex rel. Preston Mill Co. v. Howell*, 67 Wash. 377, 121 Pac. 861, said:

"The act of 1907, being Rem. & Bal. Code, § 3715,, provided, among other things, that the secretary of state should strike from the records of his office the names of all corporations which had neglected for two years to pay the annual license fees. The act of 1909, extra session, being Rem. & Bal. Code, § 3715a, provided that any corporation whose name had been stricken for failure to pay its annual license fee for two years might apply to the secretary of state for reinstatement, at any time within six months from the approval of the act or from the time its name had been stricken. Section 2 of the same act, being Rem. & Bal. Code, § 3715b, further provided that any corporation so applying should, in addition to all license fees and penalties then due, pay an

additional penalty of $25, and upon such payment such corporation would be reinstated. Section 4 of the same act, being Rem. & Bal. Code, § 3715d, provided that any corporation failing to make application for reinstatement within the time provided for such reinstatement should be thereby dissolved, and the secretary of state should enter a notation to that effect upon his official records. Sections 3715a and 3715b were amended by the act of 1911, chap. 41, page 135, whereby the six months' limitation, in which reinstatement might be made, was made to read 'at any time after its name had been stricken,' and the penalty was increased from $25 to $100. So that the law, as it now reads, provides that a corporation failing to pay its annual license fees for two years shall be stricken from the records of the office of the secretary of state; that every corporation so stricken may apply at any time thereafter for reinstatement, and when so applying shall be reinstated upon payment of all license fees and penalties then due, together with an additional penalty of $100. It will be noted that § 3715d, providing for the dissolution of the corporation for failing to apply within the time in which application might be made for reinstatement, which time was six months as fixed in the act of 1909, has now no force, since the act of 1911 changed the time in which such application might be made from six months to 'any time after its name had been stricken from the records'; and, since the dissolution was to take effect at the expiration of the time fixed in which application for reinstatement might be made, and that time is now, under the amendment of 1911, any time after the striking of the name, there is now no time fixed for such dissolution. Section 3715a, as amended by the act of 1911, reads, 'any corporation stricken from the records and dissolved as provided in this chapter,' may hold meetings and pass resolutions necessary to close out its affairs and such resolution of such 'stricken and dissolved corporation' is validated and approved.

"There is no provision, however, in this chapter for the dissolution of such corporation, as to how or when it shall take place; the only penalty to the offending corporation provided for in the act being the striking of its name from the official records of the secretary of state. The framers of this act evidently had in mind the provisions of § 3715d, which made provision for dissolution under the act of 1909. But

they failed to fix a time in which the provisions of that section could become operative. The result is there is now no time in which this section, the only one containing any provision for the dissolution of corporations for failure to pay license fees, can become operative. When, therefore, relator applied to the secretary of state to accept its license fee, he should have done so, as it had made full compliance with the law, and within the time provided by the law in force at the time the application was made."

These observations suggest the possibility of corporations dissolved under the law of 1909 before the passage of the law of 1911, as well as those defaulting after the passage of the law of 1911, being entitled to reinstatement at any time under the law of 1911. However this may be, we think that in no event can a corporation dissolved under the act of 1909 before the act of 1911 was passed be sued as a corporate entity, by service upon its president, until its corporate existence is revived and its name reinstated upon the records of the office of the secretary of state as provided by the act of 1911, assuming, for the sake of argument, that a corporation dissolved under the act of 1909 before the passage of the act of 1911 can be so revived and its name reinstated upon the records of the office of the secretary of state. In *Soderberg v. McRae*, 70 Wash. 235, 126 Pac. 538, where there was involved the status of a corporation dissolved under the act of 1909 before the passage of the act of 1911, Judge Morris, again speaking for the court, said:

"No question is raised by the corporation itself as to the effect of the act of the secretary of state in entering the order of dissolution on February 23, 1910. Nor is the corporation here seeking to reinstate itself by offering to pay arrears of license. So far as the dissolution of the corporation is concerned, it must be so regarded until, in some appropriate proceedings, it is decreed otherwise."

Without deciding the question of the status of a corporation dissolved under the act of 1909 before the passage of the act of 1911 as to its capability of being revived and re-

instated upon the records of the office of the secretary of state, we are clearly of the opinion that, while it remains in this at least dormant condition, it cannot function as a corporate entity, that it cannot either sue or be sued as such, and that whatever litigation may be instituted seeking to affect its property must be in actions wherein, its successors in interest, its trustees, or possibly its receiver, are parties.

We conclude that the tax foreclosure proceeding and the tax deed issued in pursuance thereof, upon which the claimed title of respondents to these mining claims is rested, is wholly void and of no effect for want of jurisdiction of the court in that proceeding over the Old Dominion Mining & Milling Company or over its successors in interest, to wit, its trustees. The judgment of the trial court must therefore be reversed, and the cause remanded to it for the rendering of such decree as appellants are entitled to under the views herein .expressed.

We find at page eight of the statement of facts that it was agreed between counsel during the trial that the respective rights of the parties growing out of the making of improvements upon the mining claims by respondents, which were claimed to have been made in good faith since the tax sale, should remain open and not be settled by the decree to be rendered in this case, indicating that the only purpose of all parties to this action was to test the validity of the tax foreclosure proceedings and respondents' claimed title thereto. The record before us also shows that, at the time of the commencement of this action in the superior court, appellants tendered $2,550, depositing the same in court, to reimburse respondents for moneys paid in procuring the certificate of delinquency and in taxes upon the claims. We think the superior court will be sufficiently advised as to the nature of the decree appellants are entitled to, both as to the reservation of the question of respondents' equities growing out of improvements claimed to have been made by them upon the mining claims, and as to the amount of the $2,550, tendered

by appellants and deposited in court, which respondents are entitled to, or as to whether or not respondents are entitled to more than that sum as a condition precedent to appellants being awarded a decree quieting their title to the mining claims as against respondents. This is about as definite directions as we are able to make to the trial court upon the record before us.

The judgment of dismissal is reversed, and the cause remanded to the superior court for further proceedings as herein indicated.

ELLIS, C. J., HOLCOMB, MOUNT, and FULLERTON, JJ., concur.