[No. 27595. Department One. August 1, 1940.]

HENRY R. EAGLES et al., Appellants, v. GENERAL ELECTRIC COMPANY, Respondent, R. L. RUTTER et al., Defendants, THE STATE OF WASHINGTON, Appellant.[1]

[1]Reported in 104 P. (2d) 912.

*O. C. Moore, The Attorney General* and *John E. Belcher, Assistant,* for appellants.

*Post, Russell, Davis & Paine,* for respondent.

ROBINSON, J.—In this appeal, we are at the outset confronted with the novel situation that the parties thereto are not even in agreement as to the object and purpose of the action. The respondent, General Electric Company, says the action was brought to set aside or cancel two deeds of the county treasurer of Stevens county, issued after and upon the sale of certain lands and mining claims for general state and county taxes, or, at the very least, to recover lands sold for delin-

quent taxes; while the appellants say that this is not at all the case, but that the action is waged merely to impress a trust upon the lands.

The reason for the conflict as to the object and purpose of the action is readily apparent. The matter in controversy is the right to the ownership and possession of certain lands. The respondent in possession deraigns its asserted fee title from two tax deeds issued by the county treasurer in 1923 and 1924. Rem. Rev. Stat., § 162 [P. C. § 8167], provides as follows:

"Actions to set aside or cancel the deed of any county treasurer issued after and upon the sale of lands for general, state, county or municipal taxes, or for the recovery of lands sold for delinquent taxes, must be brought within three years from and after the date of the issuance of such treasurer's deed: . . ."

and this action was not commenced until August, 1938.

The appeal is from a judgment of dismissal rendered after the plaintiffs' refusal to plead further upon the sustaining of a general demurrer to their amended complaint. The amended complaint, with its incorporated exhibits, is fifty-six pages in length. A brief statement of its principal allegations will be sufficient for an understanding of the questions presented.

It is alleged that, at the time the United States entered the World War in 1917, the lands in dispute belonged to the Roselle Mining Company, a Washington corporation. Slightly more than two-thirds of its stock was owned by citizens of the German Empire. In November, 1918, the alien property custodian of the United States sequestered these shares and caused a new board of trustees to be elected. Of the five new trustees, but two met the requirements of the law that no stockholder should be eligible to the board unless he was the owner, at the time of his election, of at least one thousand shares.

It is further alleged that the new trustees held no meetings and did nothing whatever to protect the property. In July, 1920, the secretary of state struck the corporation from his records and, no application for reinstatement having been made, noted its dissolution, in accordance with the then existing law, on July 1, 1923.

In the meantime, general taxes, assessed on a portion of the lands for 1917, had not been paid, and upon another portion for the year 1918, and certificates of delinquency were issued by the county treasurer of Stevens county. In August, 1923, a foreclosure of the certificate first mentioned was begun by the county, the summons being wholly by general publication without a return of not found or an affidavit of non-residence of the record owner, or any other similar showing. Default was taken on October 11, 1923, and judgment and order of sale entered. On October 27, 1923, a deed was executed to the purchaser, W. L. Sax, by the treasurer of Stevens county. The second certificate of delinquency was foreclosed by Stevens county approximately a year later, and in the same manner, and a deed was executed to Sax covering that portion of the property on October 25, 1924. In neither case was notice of sale given to the record owner, as required by Rem. Comp. Stat., § 11298 (then in effect), and in this connection it may be noted that, since the corporation had been dissolved on July 1, 1923, there was no record owner in existence. Both deeds were regular on their face, and the total sum paid by Sax for both deeds was $13.76.

Through a number of mesne conveyances, the lands and mining claims covered by the two tax deeds came into the possession and record ownership of the respondent, General Electric Company, a New York corporation, in July, 1936; and it is alleged that between

that date and the commencement of this action, it removed from the property tungsten ore of a value in excess of one million dollars.

It is alleged that the plaintiffs in the case are of advanced age; that each of them has long been a resident of the Dominion of Canada; and that, for many years prior to the sequestration of the German shares, they owned stock in the Roselle Mining Company. They had attempted from time to time to inquire into its affairs, but never learned until May, 1938, of the sequestration of the German owned stock in 1918, of the company's failure to keep up its license fees, of its dissolution in 1923, of its failure to pay 1917 and 1918 taxes, of the issuance of the delinquent certificates, of their foreclosure in 1923 and 1924, or of the sale and the issuance of the tax deeds. Having learned of these matters in May, 1938, they brought this action during the following August,

" . . . on behalf of themselves and all similarly situated shareholders and creditors of the dissolved Roselle Mining Company who may join and contribute to the prosecution thereof."

They joined as defendants with the General Electric Company the surviving trustees elected in 1918 at the direction of the alien property custodian, and also the state of Washington, alleging that it had some claim or interest in the lands inferior to their own; and, in substance, prayed (1) that it be adjudged and decreed that, when the Roselle Mining Company was dissolved on July 1, 1923, the lands thereupon became impressed by a trust by operation of law, the trustees of the company becoming trustees in dissolution for the benefit of the stockholders and creditors; (2) that the General Electric Company be decreed to have taken whatever paper or legal title it acquired subject to said trust and with knowledge thereof; (3) that the trustees Rutter,

Adams, Baldwin, and Dias be held to have forfeited, by abandonment and neglect, whatever authority they may have had as pretended officers of the corporation, and that a receiver be appointed to take title to the lands and all extracted ore thereon; (4) that the General Electric Company be required to convey the lands to the receiver and account for all ore extracted, including the value of ore already removed, and in case it failed or refused to convey, that a commissioner be appointed to do so; (5) that the General Electric Company be enjoined from mining and extracting ore *pendente lite*; (6) that, if for any reason in equity conveyance be found impossible, the electric company be required to account for the reasonable value of the premises, etc.; (7) that plaintiffs recover their costs and a reasonable fee for the use and benefit of their attorney.

The state came in with an answer and cross-complaint, alleging that the corporation had failed to pay its license fees for the years 1919-1923, inclusive, which it alleged, with penalties, amounted to $662.50, and prayed that its demand be declared a prior lien on the property involved.

Briefly, the theory of the main action is that the tax deeds were void because (1) the foreclosure took place at a time when the corporation's assets were in *custodia legis* and immune from execution or other judicial process not flowing from proceedings taken under Rem. Rev. Stat., § 3846 [P. C. § 4655]; and (2), relying particularly upon *Peck v. Linney,* 97 Wash. 103, 165 Pac. 1080, that the court had no jurisdiction because (a) no notice was given except by general publication; and (b) no notice was given to the "record owner," as required by Rem. Comp. Stat., § 11298.

The General Electric Company interposed a general demurrer to the amended complaint on all statutory

grounds, and a similar demurrer to the state's cross-complaint. The trial court sustained both demurrers. As to the demurrer to the amended complaint, the trial judge filed a memorandum opinion which reads as follows:

"I am of the opinion that the facts alleged in the amended complaint show that the defendant General Electric Company has a clear legal title to the mining claim and lands in question. It has a good title for two reasons:

"(1) The tax foreclosure proceedings were valid, and

"(2) If otherwise, the tax sales were not attacked within three years as provided by Sec. 162, Rem. Rev. Stat.

"The demurrer is sustained on grounds 6 and 7."

In support of their contention that the demurrer of the General Electric Company admits facts which show that the tax deeds were void, appellants have submitted a scholarly, plausible, and exhaustive argument. But if the trial court's ruling as to the application of the limitation statute is correct, the question as to whether or not the deeds were void, is immaterial. As recently as November, 1939, this court, in the case of *White v. Gehrman,* 1 Wn. (2d) 504, 507, 96 P. (2d) 453, quoted, with approval, the following language used by this court as early as 1909 and which was quoted with like approval in *Huber v. Brown,* 57 Wash. 654, 107 Pac. 850, and *Jorgensen v. Thurston County,* 145 Wash. 282, 259 Pac. 720:

" ' "Whatever the rule may be in other jurisdictions, it is firmly established in this state that a void tax deed may constitute a sufficient basis for the running of the statute of limitations." ' "

The opinion in *White v. Gehrman, supra,* not only reaffirms that declaration, but goes on to hold that the

rule applies even though the deed be void upon its face.

Appellants contend, however, that this is not the kind of action delimited by Rem. Rev. Stat., § 162. Since, in our opinion, the result of the appeal turns upon this section of the statute, we again quote it in part:

"Actions to set aside or cancel the deed of any county treasurer issued after and upon the sale of lands for general, state, county or municipal taxes, or for the recovery of lands sold for delinquent taxes, must be brought within three years from and after the date of the issuance of such treasurer's deed: . . . "

Appellants urge that they have not prayed the court to set aside or cancel the deeds, but merely to find that the General Electric Company holds the land impressed with a trust. It is true that they have not used the specific words "set aside or cancel" either in their allegations or in their prayer for relief, but they pray that the tax deeds be decreed null and void and held for naught. This is equivalent to a prayer for cancellation. Furthermore, the language of the statute covers, not only actions "to set aside or cancel," but actions "for the recovery of lands sold for delinquent taxes." The impressment of a trust is an object of the action, but it is not the ultimate object. It is but a step toward the attainment of the real and ultimate object of the action, which is unquestionably to recover lands sold for delinquent taxes.

■ Appellants point out that the property of the corporation was trust property at the time the tax deeds were issued; first, because the corporation was insolvent and the trust fund doctrine had attached, and second, because of the specific provisions of Rem. Rev. Stat., § 3846, which are as follows:

"If, however, within the period named within which a corporation may make application to be reinstated

such corporation shall not have made such application, the secretary of state shall enter upon his records a notation that such corporation is dissolved, and it shall thereupon be dissolved *and the trustees of such corporation shall hold the title to the property of the corporation for the benefit of its stockholders and creditors* to be disposed of under appropriate court proceedings." (Italics ours.)

Having made the point that the trustees held the title after the dissolution and at the time the tax deeds were issued, the appellants quote the following from *Goodwin v. American Surety Co.,* 190 Wash. 457, 478, 68 P. (2d) 619:

"Where a trustee, such as an administrator, guardian, or other representative of a person under legal disability, has been guilty of converting the estate of his *cestui que trust,* neither the trustee nor one who has received the estate from him with knowledge of the facts may plead the bar of the statute. . . . This is upon the principle that the title of the *cestui que trust* has not been affected by the transfer."

As noted in the preceding paragraph of the decision, however, this rule is but an exception to the general rule that, whenever a right of action which exists in favor of a trustee is barred by the statute of limitations, the right of the *cestui que trust* is likewise barred.

Appellants further rely upon the text of Pomeroy's Equity Jurisprudence, as quoted in our opinion in *Paysse v. Paysse,* 86 Wash. 349, 150 Pac. 622. The first sentence of the quotation reads as follows:

" 'Wherever property, real or personal, which is already impressed with or subject to a trust of any kind, express or by operation of law, is conveyed or transferred by the trustee, not in the course of executing and carrying into effect the terms of an express trust, or devolves from a trustee to a third person, who is a mere volunteer, or who is a purchaser with actual or constructive notice of the trust, then the rule is universal that such heir, devisee, successor, or other

voluntary transferee, or such purchaser with notice, acquires and holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary.' "

A great number of decisions are cited in appellants' brief which apply the above rules. But these rules are inapplicable to the facts presented by the instant case. Here, no trustee converted trust property, as is assumed in laying down the rule stated in the *Goodwin* case, or conveyed or transferred trust property, as is assumed in the rule quoted from Pomeroy. The conveyance in this case was made by the sovereign to a third party through its statutory agent, the county treasurer, in the exercise of its sovereign power to levy and collect taxes. We assume that it will not be contended that the sovereign may not levy and collect general taxes with respect to property held in trust, or that the rule that the property of an insolvent corporation constitutes a trust fund for the benefit of its creditors renders such property immune from the collection of general taxes by foreclosure and sale.

The law applicable to the situation here presented is well stated in 4 Bogert, Trusts and Trustees, 2772, § 954. We quote portions of that section:

"Causes of action which arise out of ordinary acts of trust administration or out of wrongdoing toward the trust property are vested in the trustee alone. . . . It is true that the cestui can under special circumstances maintain an action against such third party, joining the trustee as defendant, namely, in cases where the trustee is unable or unwilling to sue the third person; but in those instances the cestui is enforcing a cause of action which in fact runs to the trustee. The cestui is then merely acting as a representative of the trustee, because of the necessity of the case.

"Since such causes of action are vested in him who is the legal owner of the trust property and who makes

contracts on behalf of the trust, the delay of the trustee in pursuing his remedies should bar the cause of action under the terms of the statute of limitations. The diligence or improvidence of the owner of the cause of action should govern. The cestui has no right of action of his own against such a third person. He has merely the right to force the trustee to action, to hold him liable for failing to act, or to assert the trustee's cause of action on behalf of the trustee where the trustee is disabled or will not act. The third party against whom the cause of action lies is entitled to the benefit of the doctrine of repose after the statutory period has elapsed since the cause of action has been vested in a party who is *sui juris*. If the sole trustee, in whom is vested such a right to sue, is *non compos mentis*, or an infant, or under other disability which suspends the running of the statute, there should be an extension of time in favor of the trust; but the disability of the cestui on the one hand, or his negligence on the other, should not be of importance.

*"The cases sustain the principles outlined above, and hold that the delay of the trustee in enforcing his causes of action against third persons, where there is no mistaken or collusive breach by the trustee in participation with the third party, bars both trustee and cestui, whether the latter is under a disability or not and is a present cestui or a remainderman cestui."* (Italics ours.)

Among the footnotes citing cases supporting the text quoted, we find the following:

"95. . . . *Schiffman v. Schmidt*, 55 S. W. 451, 154 Mo. 204 (trustee's carelessness allowed taxes to become delinquent and tax sale to take place); . . . "

That is exactly the case here. In lieu of encumbering this opinion with a long list of citations, we cite an excellent note in 2 A. L. R. at page 41. This note contains a long list of authorities which support the rule stated by Professor Bogert. It appears from these citations that the rule has been enforced for many years, probably from the very beginning of the

development of the law of trusts. We call particular attention to the excerpt therein quoted from the English decision of *Lewellin v. Mackworth,* decided in 1740 [2 Eq. Cas. Abr. 579, 22 Eng. Reprint] which reads as follows:

" 'The rule . . . that the Statute of Limitations does not bar a trust estate holds only as between cestui que trust and trustees, not between cestui que trust and trustee on one side and strangers on the other, for that would be to make the statute of no force at all, because there is hardly any estate of consequence without such trust, and so the act would never take place; *therefore, where a cestui que trust and his trustee are both out of possession for the time limited, the party in possession has a good bar against them both.' "* (Italics ours.)

We also call attention to the excerpt from *Molton v. Henderson* [62 Ala. 426], an Alabama case decided in 1878, and the excerpt from the Kentucky case, *Edwards v. Woolfolk,* decided in 1865 [17 Monroe (Ky.) 376]. Both of these cases state the reason for the rule under discussion. In the *Woolfolk* case, it is said:

" 'The principle is, that the legal cause of action is in the trustee, and it is his duty to sue a stranger who has obtained the possession of the trust property, and is holding it adversely; and the cestui que trust may require him to perform this duty; and, upon his refusal, may bring an action in equity against the trustee and the person in the possession of the property, for its restoration to the custody of the trustee. For this reason, the equitable right is barred by the statute whenever the legal right is barred.' "

In this case, the plaintiffs, as *cestuis,* bring the action in equity against the trustees and the person in possession of the property; and, since the legal right is barred, the equitable right asserted by the plaintiffs is also barred.

It follows also that the circumstance that the appel-

lants did not learn the facts until May, 1938, is wholly immaterial. They sue as representative of the trustees, and the trustees are not alleged to have been under any disability, but, at the most, to have been negligent. Their negligence, as we have seen, does not prevent the running of the statute.

The A. L. R. note, above cited, was published in 1919. Since that time, many cases have been decided to the same effect, and at least one since the instant case was argued before us, *Broussard Trust v. Perryman*, 134 S. W. (2d) (Tex. Civ. App.) 308. In that case, which was brought by a plaintiff *cestui* who was *non compos mentis* during the entire period of limitation, the action was nevertheless held barred by the statute because the statute had run against the trustee; and that, in our opinion, is the case here, unless the statute be inapplicable for some other reason.

 Appellants contend that § 162 cannot be resorted to by the respondent in this case. Our attention is directed to the fact that the respondent was organized, and exists, by virtue of the laws of the state of New York, and to the accepted rule of law that a corporation is deemed a resident of the state which created it. It is then alleged that, since it is a resident of that state, it must needs be a nonresident of this, and it is therefore contended that it has no right to rely upon the limitation statute, citing Rem. Rev. Stat., § 168 [P. C. § 8175], which is as follows:

"If the cause of action shall accrue against any person who is a nonresident of this state, or who is a resident of this state and shall be out of the state, or concealed therein, such action may be commenced within the terms herein respectively limited after the coming, or return of such person into the state, or after the end of such concealment; and if after such cause of action shall have accrued, such person shall depart from and reside out of this state, or conceal himself, the time of

his absence or concealment shall not be deemed or taken as any part of the time limit for the commencement of such action."

Appellants say that, while the question they raise has never been decided by this court, the correctness of their contention appears to have been conceded in *Ilse v. Aetna Indemnity Co.*, 69 Wash. 484, 487, 125 Pac. 780. The respondent, on the other hand, says that the court conclusively answered the question in the case of *Earle v. Froedtert Grain & Malting Co.*, 197 Wash. 341, 85 P. (2d) 264, in which the contention that a foreign corporation could not rely upon the statute of limitations was rejected. Appellants counter with the claim that § 168 was not mentioned in that opinion. As to that, the briefs in that case show that the contention was in fact based upon the provisions of § 168. However, since the so-called limitation pleaded in that case was the six months' limitation with respect to actions brought by receivers to recover unlawful preferences (Rem. Rev. Stat., § 5831-1 [P. C. § 4532-1]), which is not in a true sense a statute of limitations at all (*Morris v. Orcas Lime Co.*, 185 Wash. 126, 53 P. (2d) 604; *Peeples v. Hayes,* 4 Wn. (2d) 253, 104 P. (2d) 305), it would have been a sufficient answer in that case to have said that § 168 could not possibly apply; and that, in our opinion, is likewise a sufficient answer to appellants' contention in this case.

It is said in the very case upon which appellants rely, *Ilse v. Aetna Indemnity Co., supra:*

"It must be remembered that our statute, Rem. & Bal. Code § 168 [now Rem. Rev. Stat., § 168], is an exception to the general statute of limitations. *Without this exception, the statute would run in favor of a foreign corporation to the same extent as a domestic corporation or a private individual.*" (Italics ours.)

Section 168 is an amendment of § 36 of the code of

1881, specifically made so by the enacting clause of chapter 132, Laws of 1927, p. 114. Its application is to be determined from what it says:

"If the cause of action shall accrue against any person who is a nonresident of this state, . . . such action may be commenced within the terms *herein* respectively limited. . . ." (Italics ours.)

The word "herein," italicized in the foregoing quotation, refers to the code of 1881, as amended from time to time, and it is only to limitations contained in that code or amendments thereto that § 168 applies.

Section 162, the limitation relied upon here, which provides that:

"Actions to set aside or cancel [tax deeds] . . . *must* be brought within three years . . ." (Italics ours.)

was never a part of the code of 1881, or of any general statute of limitation, although the codifiers—we presume for reasons of convenience—have included it in Title 2, chapter 3, entitled, "Limitation of Actions." It was enacted by the 1907 legislature as chapter 173, p. 398, of the laws of that session, as an independent act without any reference to any other code, statute, or system of statutes whatsoever. Neither § 168 nor any other of the general provisions contained in Title 2, chapter 3, of Remington's Revised Statutes, applies to, or limits, § 162, not even § 155 [P. C. § 8160], which provides:

". . . but the objection that the action was not commenced within the time limited can only be taken by answer or demurrer."

Inferentially, at least, this has been the previous holding of the court, for, if § 162 were an ordinary limitation and subject to § 155, the plaintiffs' right in such an action would survive the plea of the statute, the remedy alone being affected. But we have held, in

substance, that a tax deed, under our statutes, institutes a new and complete title, subject to defeasance only by a suit by the former owner which must be brought within three years. It is said in *Sparks v. Standard Lumber Co.*, 92 Wash. 584, 586, 159 Pac. 812:

"The legislature has for twenty-five years, by the clearest expressions, made a tax foreclosure a proceeding *in rem,* and a tax title a favored title as contradistinguished from the ordinary conception of a tax title— a title tainted with the suspicion of illegitimacy. *In keeping with its purpose, it has even made a title issued under a void tax foreclosure a good title if not attacked within three years.* [Citing seven former decisions.]

"To this purpose the courts have given liberal response. So that, with the passing of the old rule, it may fairly be said that a tax title is no longer *nullius filius,* but is equivalent to a decree quieting the title in the purchaser as a grant from the sovereign state. [Citing four former decisions.]" (Italics ours.)

We hold, therefore, that the title to this property, the tax deeds not having been attacked within three years, became absolute in the purchaser or his transferees, as to one portion on October 27, 1926, and as to the other, on October 25, 1927.

There remains the appeal of the state. We assume that the state's cross-complaint was interposed upon the theory that the plaintiffs might prevail, in which case, since the statute of limitations does not run against the sovereign, its claim might, perhaps, be enforced against the land. We further assume, since we hold that the respondent's predecessor in interest, the purchaser at the tax sale, got a title, as the court said in *Sparks v. Standard Lumber Co., supra,* "equivalent to a decree quieting the title in the purchaser as a grant from the sovereign state," that the state will not contend that its own lien, if any, survives. At all events, such a contention would under the circum-

stances be obviously futile. The state, having accepted the purchase price in exchange for a full and complete title, would not now be heard to say that it retained a secret lien upon the property. As was said in *State ex rel. Washington Paving Co. v. Clausen*, 90 Wash. 450, 452, 156 Pac. 554, L. R. A. 1917A, 436:

"We have repeatedly held that, in its business relations with individuals, the state must not expect more favorable treatment than is fair between men. . . . The state, in its dealings with individuals, should be held to 'resolute good faith.' "

The judgment appealed from is affirmed.

BLAKE, C. J., MAIN, MILLARD, and SIMPSON, JJ., concur.

[1]Reported in 104 P. (2d) 934.